IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
                            :

In re:                      :       Chapter 11

                            :       Case Nos. 00-3837 (JKF)

OWENS CORNING, *et al.*,        :       (Jointly Administered)

                            :

            Debtors.        :

                            :

-------------------------------------------------------x

**MOTION OF THE *AD HOC* COMMITTEE OF PREFERRED AND EQUITY SECURITY HOLDERS FOR LEAVE TO APPEAL BANKRUPTCY COURT ORDER DENYING MOTION FOR THE APPOINTMENT OF AN OFFICIAL PREFERRED AND EQUITY SECURITY HOLDERS COMMITTEE**

Pursuant to the collateral order doctrine, 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8001(b) and 8003, the *Ad Hoc* Committee of Preferred and Equity Security Holders (the "<u>*Ad Hoc* Committee</u>"), by and through its undersigned counsel, hereby submits this motion (this "<u>Motion</u>") for leave to appeal the order (the "<u>Order</u>")[1] entered by the United States Bankruptcy Court for the District of Delaware, the Honorable Judith K. Fitzgerald (the "<u>Bankruptcy Court</u>"), on February 17, 2006 (Docket No. 16982) denying the *Ad Hoc* Committee's motion (the "<u>Official Committee Motion</u>") for the appointment of an official preferred and equity security holders committee (an "<u>Official Security Holders Committee</u>") in these bankruptcy cases (collectively, the "<u>Cases</u>"). In support of this Motion, the *Ad Hoc* Committee represents as follows:

**PRELIMINARY STATEMENT**

1.     The Cases cry out for the immediate appointment of an Official Security Holders Committee. After the *Ad Hoc* Committee filed the Official Committee Motion, Owens Corning and the other debtors in the Cases (collectively, the "<u>Debtors</u>") proposed yet another

---

[1] A copy of the Order is attached hereto as <u>Exhibit A</u>.

reorganization plan (the "Plan") that seeks to wipe out the interests of all preferred and equity security holders. The Plan fails to include provisions that appear in the reorganization plans of other large debtor companies facing enormous asbestos-related liabilities, which provisions account for the potential enactment by Congress of the Fairness in Asbestos Injury Resolution Act of 2005 or similar legislation (the "FAIR Act") that would reduce by billions of dollars the Debtors' asbestos-related liabilities and thereby preserve hundreds of millions of dollars of equity value. The Plan is also premised on a $7 billion estimation of Owens Corning's asbestos-related liabilities (the "Estimation Decision") that is currently on appeal before and may be reversed by the Third Circuit Court of Appeals. To add insult to injury, the Debtors shut the *Ad Hoc* Committee out of negotiations to try to structure a consensual plan that maximizes estate value for all of the Debtors' constituents. The appointment of an Official Security Holders Committee is urgently important because consideration of the Plan is imminent: the hearing on the Plan's disclosure statement is set for April 5 and the hearing on Plan confirmation is slated to begin on July 10.

2.      Notwithstanding the immediate peril to the interests of preferred and equity security holders and other circumstances that amply demonstrate that those interests have value and are not adequately represented in the Cases, the Bankruptcy Court entered the Order denying the Official Committee Motion solely on the grounds that, in the Bankruptcy Court's view, equity is out of the money. Subsequently, the *Ad Hoc* Committee timely filed this Motion and a related notice of appeal of the Order.

3.      Although the Order may not be final in the sense that it decided all issues in the Cases, in accordance with the well-reasoned case law of this District appellate review of the Order is nonetheless warranted pursuant to the collateral order doctrine. See In re Edison Bros. Stores, No. Civ. A. 96-177-SLR, 1996 WL 363806, at *3-*4 (D. Del. June 27, 1996) (ruling that appellate review of a bankruptcy court order denying a request for the appointment of an official

equity committee was warranted under the collateral order doctrine).  It is beyond dispute that the Order conclusively determined the disputed important question of whether preferred and equity security holders are adequately represented in the Cases without an Official Security Holders Committee to represent their interests.  Such question is completely separate from the underlying issues in the Cases (including the underlying issue of whether the Plan should be confirmed).  Moreover, the opportunity for preferred and equity security holders to participate effectively in the Cases will undoubtedly be lost in short order given the Plan confirmation timetable.

4.    Alternatively, the Court should grant leave to appeal the Order pursuant to 28 U.S.C. § 158(a)(3) and related case law authority.  The Order certainly involves significant controlling questions of law as to which there exists a substantial ground for a difference of opinion, which questions include, <u>inter alia</u>, whether preferred and equity security interests are adequately represented without an Official Security Holders Committee under Section 1102(a)(2) of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") and the multi-factored tests established by the pertinent case law.  An immediate appeal from the Order would materially advance the ultimate termination of litigation relating both to the Official Committee Motion and the underlying reorganization of the Debtors.  An Official Security Holders Committee, owing fiduciary duties to all preferred and equity security holders, would work with the Debtors and other parties to fashion a consensual and estate value maximizing plan within a reasonable time.  Exceptional circumstances also exist here that justify granting the Motion.  Within a very short time, the interests of all preferred and equity security holders may be wiped out, without such holders having been afforded adequate representation in the plan process.  The legislative history of Bankruptcy Code Section 1102 highlights such representation as the critical rationale for the appointment of an official equity committee.

## QUESTIONS PRESENTED AND RELIEF SOUGHT IN THIS APPEAL

5.      The questions presented by the appeal of the Order are (a) whether the Bankruptcy Court erred in denying the Official Committee Motion by ignoring or misapplying the legal factors relevant to considering whether preferred security and equity security holders are adequately represented in the Cases as required by Bankruptcy Code Section 1102(a)(2) and applicable case law authority, (b) whether the Bankruptcy Court erred in determining that the Debtors' present purported insolvency warranted denial of the Official Committee Motion, and (c) whether the Bankruptcy Court abused its discretion in entering the Order.

6.      By pursuing its appeal of the Order, the *Ad Hoc* Committee seeks reversal of the Order and remand of this matter to the Bankruptcy Court directing the appointment of an Official Security Holders Committee.

## STATEMENT OF FACTS

7.      On October 5, 2000, the Debtors commenced the Cases by filing voluntary petitions under Chapter 11 of the Bankruptcy Code.

8.      The *Ad Hoc* Committee is comprised of members[2] who currently hold, individually and/or through their funds and/or managed accounts, (a) approximately 8.675 million shares in the aggregate of Owens Corning common stock, which holdings constitute approximately 16 % of all outstanding shares of such stock, and (b) approximately 2.2 million shares in the aggregate of certain 6½% convertible monthly income preferred securities issued by a non-debtor affiliate of Owens Corning, which holdings constitute approximately 56 % of all issued and outstanding shares of such preferred securities.

---

[2]   The members of the *Ad Hoc* Committee currently are (a) Catalyst Investment Management Co., LLC, (b) Deutsche Bank Securities Inc., (c) Hain Capital Group, LLC, (d) Harbinger Capital Partners Master Fund I, Ltd. f/k/a Harbert Distressed Investment Master Fund, Ltd., (e) Plainfield Asset Management LLC, and (f) Tudor Investment Corporation.

9.      On December 20, 2005, the *Ad Hoc* Committee filed the Official Committee Motion.  As described in more detail in the Official Committee Motion and during the hearing on it, the appointment of an Official Security Holders Committee is warranted because, inter alia:

§      Throughout the course of the Cases, the Debtors' board of directors and management have failed to take into account the interests of preferred and equity security holders, as well as other constituents.  The Plan, like the Debtors' plans proposed earlier in the Cases, calls for holders of preferred and equity security holders to receive nothing on account of their interests.  The Debtors' management and directors have also consistently sided with the asbestos claimants and their lawyers in, inter alia, advocating a high value for Owens Corning's asbestos liabilities before the Court (which advocacy contributed to the Estimation Decision), basing the Plan on the Estimation Decision and failing to include in the Plan provisions that take into account potential enactment of the FAIR Act that other Chapter 11 debtors (including The Babcock & Wilcox Co. *et al.* (Case No. 00-10992 (Bankr. E.D. La.)) and USG Corporation *et al.* (Case No. 01-2094 (Bankr. D. Del.))) facing large asbestos-related liabilities have included in their reorganization plans.  Owens Corning has also failed for years to conduct annual shareholder meetings, in violation of its obligations under state law and its own organizational documents.

§      The need for representation of the preferred and equity security holders by an Official Security Holders Committee undoubtedly outweighs the costs of such representation.  The Plan seeks to wipe out all equity interests, even though a consensual and confirmable plan that maximizes value for all of the Debtors' constituents is achievable.  By comparison, the fees and expenses to be incurred by an Official Security Holders Committee and its professionals will likely not be high: their service will be of limited duration.

§      The Cases are large and complex.  The Debtors have a complicated capital structure, that includes billions of dollars of bank, bond (consisting of numerous tranches), trade, inter-company and asbestos-related debt.  There are 68 Debtor and non-Debtor affiliates with 17,500 employees world-wide.  The Cases have been contentious since their outset, evidenced by recusal proceedings against District Judge Wolin, substantive consolidation litigation, asbestos-related claims estimation proceedings and numerous appeals related thereto.

§      The preferred and equity securities are widely held and actively traded.  The Debtors have estimated that 6,900 holders own approximately 55.4 million shares of the Owens Corning common stock.  The common stock's average daily trading volume numbers in the hundreds of thousands.  Four million shares of the preferred securities are also outstanding and actively traded.

§ The preferred and equity securities clearly have substantial value when properly evaluated in accordance with the applicable legal standards, which require that contingent future events be taken into account. The enactment of the FAIR Act or reversal of the Estimation Decision, each of which is likely, will drastically slash the Debtors' asbestos-related liabilities and correspondingly enhance the securities value. The market also recognizes the substantial value of the securities, given the securities' considerable market capitalization.

10.     The Debtors and other parties opposed the Official Committee Motion.

11.     On December 31, 2005, the Debtors filed their Plan, which proposes to wipe out the interests of all preferred and equity security holders.[3]  See Plan, at 79-80; Disclosure Statement relating to the Plan (the "Disclosure Statement"), at ix.  The disclosure statement relating to the Plan is currently scheduled to be considered by the Bankruptcy Court on April 5, 2006, and a hearing on confirmation of the Plan is currently scheduled to begin on July 10, 2006. See Transcript of January 30, 2006 Hearing (the "Transcript"), at 49, 54-55.[4]

12.     At a hearing held on January 30, 2006, the Bankruptcy Court made the following determination supporting its denial of the Official Committee Motion:

> Well, it seems to me that the test is not met.  There is no evidence before me that the debtor is solvent at this point in time in any way.  I have no authority to assume that the liabilities are going to be anything less than $7 billion because the District Court's told me that's what they are, and I am not an appellate court to set aside District Court determinations.  So, as far as I'm concerned, its $7 billion.  If I add up all the numbers that have been put on the record with respect to the asset value of the debtor, they don't total $7 billion, and that's not the debtor's only claim.  So, I don't see how at this point equity is entitled to a distribution or will get a distribution under any scenario, and at this point in time, I, therefore, am denying this motion.  If the FAIR Act passes and this case is still pending, if the $7 billion number is set aside and the number is low enough that in fact equity stands a chance at recovering funds, at that point I will certainly hear the Equity Committee's motion and probably have a much different reaction to it than I have now.  But as of today, this motion is denied without prejudice.  There is no basis for me to find that equity will receive a return of any type in this case based on the asset value of the debtor.  So, it's denied for that reason without prejudice.

---

[3] Copies of relevant pages of the Plan and Disclosure Statement are attached hereto as Exhibit B.
[4] Copies of relevant pages of the Transcript are attached hereto as Exhibit C.

See Transcript, at 77-78.

13.   On February 17, 2006, the Bankruptcy Court entered the Order denying the Official Committee Motion.

14.   On February 27, 2006, the *Ad Hoc* Committee timely filed its notice of appeal of the Order and this Motion.

**STATEMENT OF THE REASONS WHY AN APPEAL
OF THE ORDER SHOULD BE GRANTED**

**A.   The Collateral Order Doctrine Merits Appellate Review Of The Order.**

15.   Appellate review of an order is warranted under the collateral order doctrine where such order (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment.  See Edison, 1996 WL 363806 at *3 (citing, inter alia, Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949)).

16.   In the Edison case, the United States District Court for the District of Delaware held that an order denying a request to appoint an official equity committee warranted appellate review under the collateral order doctrine.  See Edison, 1996 WL 363806 at *3-*4.  In Edison, the bankruptcy court had denied, without prejudice, non-insider shareholders' motion for appointment of an official equity committee, finding that there was no evidence that the insider shareholders could not adequately represent non-insider shareholders.  See id. at *1.  An appeal from the bankruptcy court's denial order ensued, and subsequently the creditors' committee filed a motion seeking to dismiss the appeal for want of subject matter jurisdiction.  See id.  The district court denied the motion to dismiss, holding that appellate review of the denial order was warranted under the collateral order doctrine: (a) the bankruptcy court had conclusively determined that it was unnecessary to appoint an official equity committee to assure adequate

representation to non-insider shareholders, (b) the issue of adequate representation was an important issue completely separate from the merits of the reorganization, and (c) "at some point in the proceedings, the opportunity for the shareholders to effectively participate in the reorganization will be lost." See id. at *3. The district court further explained that denying appellate review would "most certainly engage the court and the parties in a guessing game of when such an issue has been developed enough for review without being mooted by the passage of time." See id.

17.     The Court should follow the sound reasoning of the Edison decision and determine that under the collateral order doctrine the Order should be reviewed on appeal. First, like the order at issue in Edison, the Order, in effect, conclusively determined that an Official Security Holders Committee should not be appointed in the Cases. Second, the important (and disputed) issue of the adequacy of the representation of preferred and equity security holders is completely separate from the underlying issues raised in the Cases, including whether the Plan should be confirmed. Third, the Order will certainly become non-reviewable upon confirmation of the Plan, which is slated for a fast-approaching July 2006 confirmation hearing, notwithstanding the Order's language that the denial of the Official Committee Motion was "without prejudice," see Edison, 1996 WL 363806, at *3.

**B.     Alternatively, The Court Should Grant Leave To Appeal The Order Pursuant To 28 U.S.C. § 158(a)(3).**

**1.     The legal standards for granting leave to appeal pursuant to 28 U.S.C. § 158(a)(3) and applicable case law authority.**

18.     Even assuming arguendo that the Order is not appealable under the collateral order doctrine notwithstanding the well-reasoned Edison precedent, the Court should grant leave to appeal the Order pursuant to 28 U.S.C. § 158(a)(3) and related case law authority.

19.     Section 158(a)(3) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from interlocutory orders and

decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Section 158(a)(3) provides no statutory criteria for determining whether to grant leave to appeal an interlocutory order. Thus, district courts use the criteria employed by the circuit courts in ascertaining whether to grant leave to appeal from district court interlocutory orders; under such criteria, leave to appeal is warranted if (1) the order involves a controlling question of law, (2) there is a substantial ground for difference of opinion in respect of such question, and (3) immediate appeal would materially advance the ultimate termination of the litigation. See Edison, 1996 WL 363806, at *3; In re Delaware & Hudson Ry., 96 B.R. 469, 472-73 (D. Del. 1989), aff'd, 884 F.2d 1383 (3d Cir. 1989).

20.     Even if the foregoing three criteria are not met, leave to appeal should be granted if exceptional circumstances exist. See Escondido Mission Village L.P. v. Best Products Co., 137 B.R. 114, 117 (S.D.N.Y. 1992) (granting leave to appeal on the basis of exceptional circumstances where there was no controlling question of law over which substantial grounds for difference of opinion existed).

### 2.     Leave to appeal the Order is amply justified under the applicable legal standards.

21.     The questions of whether an Official Security Holders Committee should be appointed in the Cases and whether the Bankruptcy Court failed to take into account or misapplied the relevant legal factors in addressing such an appointment request are controlling questions of law over which there exists substantial ground for difference of opinion. See Edison, 1996 WL 363806, at *3. Pursuant to Bankruptcy Code Section 1102(a)(2) and related case law, courts consider several factors in considering an official committee appointment request: (a) the size and complexity of the case; (b) whether the claims or interests at issue are widely held; (c) whether the need for adequate representation is significantly outweighed by the cost of a committee; (d) the timing of the request; and (e) whether there exists a prospect of

equity value.  See In re Kalvar Microfilm, Inc., 195 B.R. 599, 600 (Bankr. D. Del. 1996); In re Edison Bros. Stores, No. Civ. A. 96-177-SLR, 1996 U.S. Dist. LEXIS 13768, *11 (D. Del. September 17, 1996); In re Johns-Manville Corp., 68 B.R. 155, 159 (Bankr. S. D. N. Y. 1986); In re Beker Indus., 55 B.R. 945, 948-51 (Bankr. S. D. N. Y. 1985).

22.    An analysis of the foregoing factors against the circumstances here yields the inescapable conclusion that the appointment of an Official Security Holders Committee in the Cases is necessary:  (a) there is no dispute that the Cases are large and complex; (b) there is no dispute that the preferred and equity security interests are widely held; (c) the need for adequate representation for preferred and equity security interests significantly outweighs the cost of an Official Security Holders Committee, particularly given the imminent threat to such interests posed by the Plan and the likely minimal cost for such a committee; (d) the timing of the Official Committee Motion is undoubtedly appropriate given the imminent consideration of the Plan that threatens to wipe out equity; and (e) there exists a reasonable prospect, particularly in light of possible enactment of the FAIR Act and reversal of the Estimation Order, that the preferred and equity security holders will achieve a recovery.

23.    In entering the Order, the Bankruptcy Court abused its discretion and erred as a legal matter by completely ignoring the foregoing criteria, save the prospect of equity value criterion.  See Transcript, at 77-78.  See also Kalvar Microfilm, 195 B.R. at 600 (no one factor is dispositive); 7 COLLIER ON BANKRUPTCY ¶ 1102.03[2][a] (15th ed. 2003) ("the solvency of the debtor should not be the only factor, or even the principal factor, in deciding whether to appoint a committee of equity security holders").

24.    Moreover, in at least three ways, the Bankruptcy Court misapplied the prospect of equity value criterion by holding that the present purported insolvency of the Debtors justified denial of the Official Committee Motion.  First, the Bankruptcy Court ignored the substantial dispute regarding whether the preferred and equity security interests have a reasonable prospect

of value, which dispute alone warrants the appointment of an Official Security Holders Committee in the Cases.  See In re AM Int'l, 203 B.R. 898, 902 (D. Del. 1996) (the district court noted that the bankruptcy court had appointed an equity committee over creditors' objection because there was a considerable question as to whether the debtor was in fact insolvent); In re Wang Laboratories, 149 B.R. 1 (Bankr. D. Mass. 1992) (court appointed equity committee because there was a dispute whether the debtor was insolvent – U.S. Trustee pointed to debtor's financial disclosures of significant negative balance sheet equity, while shareholder pointed to positive market valuation of his shares on the American Stock Exchange).

25.    Second, the Bankruptcy Court misapplied the prospect of equity value criterion by failing to adopt a forward-looking evaluation, as mandated by applicable legal authority, that takes into account the likelihood that future events (such as enactment of the FAIR Act or reversal of the Estimation Order) will occur.  See Spitzer v. Stichman (In the Matter of Hudson & Manhattan Ry. Co.), 278 F.2d 402, 405-10 (2d Cir. 1960) (court considered potential future events, such as a possible sale to and possible condemnation by public agencies, in valuing the reorganizing debtor).  See also Consolidated Rock Products v. DuBois, 312 U.S. 510, 526 (1941) (holding that earning capacity is the essential criterion to ensure fair and equitable distributions among the claimants).  Matter of Penn Central Transp., 596 F.2d 1102, 1115-15 (3d Cir. 1979) ("[T]he market value of the security [in a reorganized debtor] will depend on the investing public's perception of the future prospects of the enterprise.  That perception may well be unduly distorted by the recently concluded reorganization and the prospect of lean years for the enterprise in the immediate future.") (bracketed text supplied); In re Exide Tech., 303 B.R. 48, 65-66 (Bankr. D. Del. 2003) (forward-looking valuation of a reorganized debtor appropriate to avoid the "taint" of bankruptcy).

26.    Third, the Bankruptcy Court ignored the substantial market capitalization for the common stock and the preferred securities (over $235 million and $84 million, respectively, as

of January 27, 2006), notwithstanding the U.S. Supreme Court's pronouncement that the market's valuation is superior to a bankruptcy judge's valuation.  See Transcript, at 59.  See also Bank of America Nat'l Trust and Sav. Assn. v. 203 North LaSalle Street Partnership, 526 U.S. 434, 457 (1999) ("[u]nder a plan granting an exclusive right, making no provision for competing bids or competing plans, any determination that the price was top dollar would necessarily be made by a judge in bankruptcy court, whereas the best way to determine value is exposure to a market ... This is a point of some significance, since it was, after all, one of the [Bankruptcy] Code's innovations to narrow the occasions for courts to make valuation judgments … .") (citations omitted; bracketed text supplied).

27.    An immediate appeal from the Order would materially advance the ultimate termination of litigation relating both to the Official Committee Motion and the underlying reorganization of the Debtors.  Upon its appointment, an Official Security Holders Committee would work with the Debtors and other parties to negotiate, to document and to obtain confirmation a consensual reorganization plan that maximizes estate value for all constituents, including preferred and equity security holders.  Without the appointment of an Official Security Holders Committee, the Debtors will face continued litigation in connection with both the Official Committee Motion and the Plan confirmation process.  As it stands now, the Plan will likely not pass muster under the Bankruptcy Code confirmation standards because of, among other things, the Debtors' failure to include in the Plan reasonable FAIR Act contingency provisions.

28.    Exceptional circumstances exist here that more than justify granting the Motion. According to the legislative history of Bankruptcy Code Section 1102, "creditors' and equity security holders' committees … will be the primary negotiating bodies for the plan of reorganization."  House Report No. 95-595, 95th Cong., 1st Sess. 401 (1977).  Accordingly, Congress recognized the critical importance of appointing equity committees to represent their

constituents' interests in the plan negotiation process. The Order, however, effectively deprives the preferred and equity security holders of any opportunity to participate effectively in the plan negotiation process with an Official Security Holders Committee representing their interests. Indeed, the Debtors refused to include the *Ad Hoc* Committee in the Plan formulation process. And if the Plan is confirmed and consummated, which may be imminent given the current schedule, all preferred and equity security interests will be obliterated, even though those interests actually have a reasonable prospect to obtain a recovery in light of the possible enactment of the FAIR Act and/or the possible reversal of the Estimation Decision. These exceptional circumstances alone warrant granting the Motion.

**CONCLUSION**

WHEREFORE, the *Ad Hoc* Committee respectfully requests that the Court enter an order (1) granting this Motion, (2) granting the *Ad Hoc* Committee leave to appeal the Order, and (3) granting to the *Ad Hoc* Committee such other and further relief as is just and proper.

Dated:  February 27, 2006
      Wilmington, Delaware

**CONNOLLY BOVE LODGE & HUTZ LLP**

**/s/ Marc J. Phillips**
Jeffrey C. Wisler (No. 2795)
Christina M. Thompson (No. 3976)
Marc J. Phillips (No. 4445)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 888-6258

- and -

**BROWN RUDNICK BERLACK ISRAELS LLP**
Edward S. Weisfelner, Esq.
Robert J. Stark, Esq.
Seven Times Square
New York, New York 10036
(212) 209-4800

-and-

Anthony L. Gray, Esq.
John C. Elstad, Esq.
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

**CO-COUNSEL TO THE *AD HOC* COMMITTEE**

#449232

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case Nos. 00-3837 (JKF) |
| OWENS CORNING, et al.,[1] | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |

Related to Docket No. 16495
Hearing Date: January 30, 2006
Agenda Item No. 11

### ORDER DENYING MOTION OF THE AD HOC COMMITTEE OF PREFERRED AND EQUITY SECURITY HOLDERS FOR THE APPOINTMENT OF AN OFFICIAL PREFERRED AND EQUITY SECURITY HOLDERS COMMITTEE

The Court having considered the Motion of the Ad Hoc Committee of Preferred and Equity Security Holders (the "Ad Hoc Committee") for the Appointment of an Official Preferred and Equity Security Holders Committee (Docket No. 16495) (the "Motion"); and having considered the objections to the Motion filed by the United States Trustee (Docket No. 16687), Credit Suisse, Cayman Islands Branch, as Agent (Docket No. 16664) and Owens Corning and its affiliated debtors and debtors-in-possession (the "Debtors") (Docket No. 16697), and having considered the Joinders to the Debtors' objection filed by the Legal Representative for Future Claimants (Docket No. 16698) and the Official Committee of Asbestos Claimants (Docket No. 16710), and upon the entire record in these chapter 11 cases; and a hearing having been held with respect to the Motion on January 30, 2006; and notice of the Motion being sufficient; and after due consideration thereof; and for the reasons stated on the record at the hearing on the Motion; it is hereby

---

[1]     The Debtors are Owens Corning, CDC Corporation, Engineered Yarns America, Inc., Exterior Systems, Inc., Falcon Foam Corporation, Fibreboard Corporation, HOMExperts LLC, Integrex, Integrex Professional Services LLC, Integrex Testing Systems LLC, Integrex Supply Chain Solutions LLC, Integrex Ventures LLC, Jefferson Holdings, Inc., Owens-Corning Fiberglas Technology Inc., Owens Corning HT, Inc., Owens-Corning Overseas Holdings, Inc., Owens Corning Remodeling Systems, LLC and Soltech, Inc.

#16985
2/17/06

ORDERED, ADJUDGED AND DECREED that

      1.    For the reasons stated on the record, the Motion is DENIED, without prejudice.

      2.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: February 17, 2006

                                            Judith K. Fitzgerald
                                          Honorable Judith K. Fitzgerald mab
                                          United States Bankruptcy Judge

**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| OWENS CORNING. et al.. ) | Case No. 00-03837 (JKF) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

**FIFTH AMENDED JOINT PLAN OF REORGANIZATION FOR OWENS CORNING
AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION**

SAUL EWING LLP
Norman L. Pernick (I.D. # 2290)
J. Kate Stickles (I.D. # 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

Charles O. Monk, II
Jay A. Shulman
Lockwood Place
500 E. Pratt Street
Baltimore, MD 21202
(410) 332-8600

Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7777

Attorneys for the Debtors and
Debtors-in-Possession

SIDLEY AUSTIN LLP
James F. Conlan
Larry J. Nyhan
Jeffrey C. Steen
Dennis M. Twomey
Eric J. Pearson
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Attorneys for the Debtors and
Debtors-in-Possession

COVINGTON & BURLING
1201 Pennsylvania Avenue. N.W.
Mitchell F. Dolin
Anna P. Engh
Washington. D.C. 20004-2401
(202) 662-6000

Special Insurance Counsel to Debtors
and Debtors-in-Possession (as to insurance
matters)

i

1.180   **"MIPS Claims and Interests"** means all Claims directly or indirectly against OCD (or Interests to the extent any such Claims may be characterized as Interests) by the holders of the 6 ½ % Convertible Monthly Income Preferred Securities issued by Owens-Corning Capital L.L.C. or any Person (including any trustee) asserting such Claims derivatively or otherwise on behalf of such holders, including (i) the Claims of Owens-Corning Capital L.L.C. for approximately $253 million original aggregate principal amount arising from OCD's 6.5% Convertible Subordinated Debentures due 2002, issued pursuant to an indenture dated as of May 10, 1995, between OCD, Owens-Corning Capital L.L.C. and Harris Trust and Savings Bank, as trustee, (ii) Claims arising under the guarantee agreement, dated as of May 10, 1995, in respect of such Convertible Subordinated Debentures executed by OCD as guarantor, (iii) the Claim of The Bank of New York, as Special Trustee on behalf of the holders of the 6 ½ % Convertible Monthly Income Preferred Securities, and (iv) any Interests of the foregoing to the extent any rights of such holders may be characterized as Interests.

1.181   **"Mt. McKinley Entities"** means Mt. McKinley Insurance Company, f/k/a known as Gibraltar Casualty Company; Everest Reinsurance Company, f/k/a as Prudential Reinsurance Company and Everest Reinsurance Holdings, Inc.; as well as (a) all of their past, present, and future parents, subsidiaries, affiliates, controlled entities, predecessors, successors, reorganized companies, holding companies (if any), merged companies, acquired companies, and assigns; and (b) all of the respective employees, officials, representatives, agents, attorneys, officers, and directors, in their capacity as such, of the entities encompassed by clause (a).

1.182   **"Mt. McKinley Policies"** means the following policies issued to OCD:

| Issuer | Policy Period | Policy Number |
|--------|---------------|---------------|
| Mt. McKinley | 9/1/79 to 9/1/80 | GMX 00232 |
| Mt. McKinley | 9/1/79 to 9/1/80 | GMX 00236 |
| Mt. McKinley | 9/1/80 to 9/1/81 | GMX 00719 |
| Mt. McKinley | 9/1/80 to 9/1/81 | GMX 00720 |
| Mt. McKinley | 9/1/81 to 9/1/82 | GMX 01308 |
| Mt. McKinley | 9/1/81 to 9/1/82 | GMX 01309 |
| Mt. McKinley | 9/1/82 to 9/1/83 | GMX 01828 |
| Mt. McKinley | 9/1/82 to 9/1/83 | GMX 01829 |
| Mt. McKinley | 9/1/83 to 9/1/84 | GMX 02346 |
| Mt. McKinley | 9/1/83 to 9/1/84 | GMX 02347 |
| Mt. McKinley | 9/1/84 to 9/1/85 | GMX 02697 |

"Mt. McKinley Policies" shall also be deemed to include all insurance policies other than the above-listed policies, that were issued by Mt. McKinley Insurance

policies and agreements, whether against the insurers that issued such policies and their successors and assigns, or, with respect to any insolvent insurers, Insolvent Insurer PI Rights and Insurance Guarantee Fund PI Rights; and (ii) the right, on behalf of the Debtors, to give a full release of the insurance rights of the Debtors for asbestos-related personal injury claims under any such policies and settlement agreements, provided that a reciprocal release of the Debtors in connection with said policies and settlement agreements is given in exchange by the insurer or other released insurance entity and further provided that any such release shall not encompass rights with respect to coverage for workers' compensation claims or claims other than asbestos-related personal injury claims.

1.195   **"OC Asbestos Property Damage Claim"** means any present or future right to payment, claim, remedy or liability against, or debt or obligation of, any OC Person, whether or not such right, claim, remedy, or liability is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts or legal basis for such right, claim, remedy, liability, debt or obligation are known or unknown, under any theory of law, equity, admiralty, or otherwise for, relating to, or arising by reason of, directly or indirectly, damage to property, including, without limitation, diminution in the value thereof, or environmental damage or economic loss related thereto, caused or allegedly caused, directly or indirectly, in whole or in part by the presence in buildings or other systems or structures of asbestos or asbestos-containing products that were manufactured, installed, fabricated, sold, supplied, produced, distributed, released or in any way at any time marketed or disposed of by any OC Person, or for which any OC Person is liable due to the acts or omissions of any OC Person, including, without express or implied limitation, any right, claim, remedy, liability against, or debt or obligation for compensatory damages (such as proximate, consequential, general and special damages) and including punitive damages. OC Asbestos Property Damage Claims include OC Indirect Asbestos Property Damage Claims, but do not include FB Asbestos Property Damage Claims.

1.196   **"OCD"** means Owens Corning, a Delaware corporation.

1.197   **"OCD/FB Settlement"** means a global settlement of various issues and potential claims among Fibreboard, on the one hand, and OCD, on the other hand, pursuant to which, among other things, upon the Effective Date, (i) the FB Sub-Account Settlement Payment shall be made by OCD to the FB Sub-Account, (ii) the assets distributable to the FB Sub-Account and the FB Asbestos Property Damage Trust shall be limited to those described in Section 3.4(d) and Section 3.4(e), respectively, below, and (iii) holders of Allowed Class B6 and B10 Claims shall be paid in full (excluding post-petition interest).

1.198   **"OCD Asbestos Personal Injury Estimation Order"** means that certain order entered by the District Court on March 31, 2005 (as supplemented on April 13, 2005) which estimated the total amount of contingent and unliquidated claims

against OCD for personal injury caused by exposure to asbestos (including pending claims, future claims, and contract claims) to be $7,000,000,000.

1.199 **"OCD Insurance Escrow"** means the escrowed insurance proceeds received from certain of OCD's solvent excess insurance carriers in connection with the settlement of disputes concerning coverage for asbestos-related personal injury claims, which are reflected in OC's consolidated balance sheet as restricted assets, together with all accrued earnings thereon, an estimate of which as of the Effective Date shall be set forth on Schedule XII, to be filed no later than five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline.

1.200 **"OCD Interests"** means, collectively, all Existing OCD Common Stock, Existing OCD Preferred Stock and Existing OCD Options, together with any options, warrants, conversion rights, rights of first refusal or other rights, contractual, equitable or otherwise, to acquire or receive any Existing OCD Common Stock, Existing OCD Preferred Stock, Existing OCD Options or other capital stock in OCD, or any contract subscription, commitment or agreement pursuant to which any Person was or could have been entitled to receive any share of the capital stock of OCD, or any such option, warrant, conversion right, right of first refusal or other right (including, without limitation, any rights of any 401(k) plan or the interest of any participant therein), in each case issued or entered into by, or otherwise the obligation of, OCD or another Debtor. The OCD Interests shall, and shall be deemed to, include the rights of the holders of MIPS Claims and Interests, to the extent such rights may be classified as interests.

1.201 **"OCD Restricted Cash"** means the amount of administrative deposits made by OCD to the NSP Administrative Deposit Accounts (together with earnings therein) in respect of OC Asbestos Personal Injury Claims to facilitate claims processing under the NSP as of five (5) Business Days prior to the Effective Date.

1.202 **"OCD Reversions"** means such amounts as may from time to time be delivered from the NSP Administrative Deposit Accounts in respect of OC Asbestos Personal Injury Claims and returned to OCD in accordance with an order of a court of competent jurisdiction, settlement among the parties, or otherwise.

1.203 **"OCFBV Class A11 Claim"** means the Allowed, Subordinated Claim of O.C. Funding B.V. against OCD approved by the Bankruptcy Court on June 23, 2004 in the amount of approximately $23,336,305.

1.204 **"OCFT"** means Owens-Corning Fiberglas Technology Inc., an Illinois corporation.

1.205 **"OCHT"** means Owens Corning HT, a Delaware corporation.

1.206 **"OC Indirect Asbestos PI Trust Claim"** means any present or future right to payment, claim, remedy, liability, or Demand against any OC Person, whether or not such right, claim, remedy, liability or Demand is reduced to judgment,

36

(iv)    Status

Class A7 Claims are Impaired.  To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class A7 shall be entitled to vote to accept or reject the Plan.

(g)    *Class A10:  OCD Intercompany Claims*

(i)    Allowance

All material issues regarding Class A10 Claims that are not resolved among the Plan Proponents or otherwise prior to the Confirmation Hearing, shall be determined by the Court at the Confirmation Hearing.

(ii)    Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class A10 Claim, on, or as soon as reasonably practicable after, the Initial Distribution Date, each holder of an Allowed Class A10 Claim shall be credited with value equal to such holder's Pro Rata share of the Class A10 Distribution Amount.

(iii)    Status

Class A10 Claims are Impaired.  To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class A10 shall be entitled to vote to accept or reject the Plan.

(h)    *Class A11:  OCD Subordinated Claims*

(i)    Allowance

Subject to Sections 3.3(e)(ii)(B)(3) and 3.3(e)(ii)(B)(3) above, the Class A11 Claims related to the MIPS Claims and Interests and the OCFBV Class A11 Claim shall be Allowed in the amounts of approximately $253.2 million and $23.3 million, respectively.  All material issues regarding any other asserted Class A11 Claims that are not resolved among the Plan Proponents or otherwise prior to the Confirmation Hearing (including any issues regarding the distributions on account of such asserted Class A11 Claims) shall be determined by the Court at the Confirmation Hearing.

(ii)    Treatment

(A) Subject to Sections 3.3(e)(ii)(B)(3) and 3.3(e)(ii)(B)(3) above, the distributions which otherwise would have been made to holders of Allowed Claims in Class A11 had such Claims not been subordinated in accordance with the applicable agreements or instruments subordinating such Claims shall be paid or issued to the holders of Allowed Claims in Classes A4, A5 and/or A6-B in accordance with the distribution procedures for such Classes in Sections 3.3(b)(ii), 3.3(c)(ii) and 3.3(e)(ii), respectively.

79

(B) As of the Effective Date, if Class A11 accepts the Plan, the rights of any and all members of Class A11 to pursue, and receive any benefits of, from or under, the pending appeal of the OCD Asbestos Personal Injury Estimation Order shall be deemed to have been waived and released under the Plan to the fullest extent permissible under applicable law.

(iii)     Status

Class A11 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class A11 shall be entitled to vote to accept or reject the Plan.

(i)     *Class A12: OCD Interests*

(i)     Treatment

On the Effective Date, all of the Class A12 Interests outstanding as of the Effective Date shall be deemed cancelled and extinguished. No holder thereof shall be entitled to, or shall receive or retain, any property or interest in property on account of such Class A12 Interests.

(ii)     Status

Class A12 Interests are Impaired. The holders of the Interests in Class A12 are deemed to have rejected the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

### 3.4     Fibreboard (Classes B1 through B12)

(a)     *Class B3: Fibreboard Convenience Claims*

(i)     Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class B3 Claim becomes an Allowed Class B3 Claim, or (iii) the date on which such Class B3 Claim becomes due and payable pursuant to any agreement between Fibreboard and a holder of a Class B3 Claim, each holder of an Allowed Class B3 Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class B3 Claim (a) Cash equal to the amount of such Allowed Class B3 Claim or (b) such other treatment as Fibreboard and such holder shall have agreed in writing.

(ii)     Election

Any holder of a Claim in Class B6 or Class B9 that desires treatment of such Claim as a Fibreboard Convenience Claim shall make such election on the Ballot to be provided to holders of Impaired Claims entitled to vote to accept or reject the Plan (as specified in Section 4.1 of the Plan) and return such Ballot to the address specified therein on or before the Voting Deadline. Any election made after the Voting Deadline shall not be binding on the Debtors unless the Voting Deadline is expressly waived in writing by the Debtors with respect to any such Claim.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| OWENS CORNING, et al., | ) | |
| | ) | Case No. 00-03837 (JKF) |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

## DISCLOSURE STATEMENT WITH RESPECT TO FIFTH AMENDED JOINT PLAN OF REORGANIZATION FOR OWENS CORNING AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION

**SAUL EWING LLP**
Norman L. Pernick (I.D. # 2290)
J. Kate Stickles (I.D. # 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

Charles O. Monk, II
Jay A. Shulman
Lockwood Place
500 E. Pratt Street
Baltimore, MD 21202
(410) 332-8600

Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7777

Attorneys for the Debtors and
Debtors-in-Possession

**SIDLEY AUSTIN LLP**
James F. Conlan
Larry J. Nyhan
Jeffrey C. Steen
Dennis M. Twomey
Eric J. Pearson
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Attorneys for the Debtors and
Debtors-in-Possession

**COVINGTON & BURLING**
Mitchell F. Dolin
Anna P. Engh
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

Special Insurance Counsel to Debtors
and Debtors-in-Possession

814526.7

## SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS
The estimated recoveries for each of the Classes is summarized as follows:

| CLASS | DESCRIPTION | TREATMENT | ESTIMATED ALLOWED CLAIMS (in millions) | ESTIMATED RECOVERY[1] |
|---|---|---|---|---|
| Unclassified Claims | DIP Facility Claims | N/A | $0 | 100% |
| Unclassified Claims | Administrative Claims | N/A | $45-50 (excluding Intercompany Claims) | 100% |
| Unclassified Claims | Priority Tax Claims | N/A | $64-99 | 100% |
| Classes A1 to U1 Claims | Other Priority Claims | Unimpaired | $.4-2.8 | 100% |
| Classes A2-A to U2-A Claims | Other Secured Tax Claims | Unimpaired | $3.4-3.7 | 100% |
| Classes A2-B to U2-B Claims | Other Secured Claims | Unimpaired | $9.5-9.8 | 100% |
| Classes A3 to U3 Claims | Convenience Claims | Impaired | $9 | 100% |
| Classes A4 to I4 Claims | Bank Holders Claims | See Estimated Recovery column | $1.467 billion (excluding (i) approximately $69 million of undrawn pre-petition letters of credit and (ii) certain pre-petition interest, subject to further reconciliation[2] | (i) if unimpaired, or if deemed impaired and the class accepts the Plan, 150.3% (includes post-petition interest at Base Rate plus 2%, calculated on a compounding basis (computed quarterly), plus accrued and unpaid post-petition letter of credit and facility fees), in the form of Cash; or (ii) if deemed impaired and the class rejects the Plan, an amount as determined by the Bankruptcy Court, in Cash and cash pay Senior Notes (in form and substance satisfactory to the Debtors). |
| Class A5 Claims | Bondholders Claims | Impaired | $1,389 | (i) if Class A5 and Class A6-B accept the Plan, 48.4% in the form of approximately 16.2% Cash and 83.8% New OCD Common Stock; or (ii) if Class A5 or Class A6-B rejects the Plan, potentially 38.9% in the form of approximately 16.2% Cash and 83.8% New OCD Common Stock. |

[1] Each of these estimated recovery amounts is based on the low end of the range of current estimates and these estimates remain subject to further changes. The actual recovery amounts will be based on a number of considerations set forth in the Plan which cannot be determined with certainty at this time. Moreover, the terms of the Plan will govern the actual recoveries for the various Classes.

[2] This estimate of Class A4 Claims represents the amount outstanding under the 1997 Credit Agreement as of the Petition Date, including certain amounts related to letters of credit drawn or expected to be drawn prior to the Effective Date, less the application of certain frozen funds. It does not include any amounts for post-petition interest or fees.

| Class U6 Claims | OC Overseas General Unsecured Claims | Impaired | de minimis | 100% (in the form of approximately 16.2% Cash and 83.8% New OCD Common Stock) |
|---|---|---|---|---|
| Class A10 Claims | OCD Intercompany Claims | Impaired | $2,563 | N/A[3] |
| Class B10 Claims | FB Intercompany Claims | Impaired | $763 | N/A |
| Class C10 Claims | ESI Intercompany Claims | Impaired | $678 | N/A |
| Class D10 Claims | Vytec Intercompany Claims | Impaired | Not currently applicable*. | N/A |
| Class E10 Claims | Soltech Intercompany Claims | Impaired | $58 | N/A |
| Class F10 Claims | OCFT Intercompany Claims | Impaired | $511 | N/A |
| Class G10 Claims | OC Sweden Intercompany Claims | Impaired | Not currently applicable* | N/A |
| Class H10 Claims | IPM Intercompany Claims | Impaired | Not currently applicable* | N/A |
| Class I10 Claims | Integrex Intercompany Claims | Impaired | $318-1,151 | N/A |
| Class J10 Claims | CDC Intercompany Claims | Impaired | $.4 | N/A |
| Class K10 Claims | OCHT Intercompany Claims | Impaired | $6.5 | N/A |
| Class L10 Claims | OC Remodeling Intercompany Claims | Impaired | $1.7 | N/A |
| Class M10 Claims | Engineered Yarns Intercompany Claims | Impaired | de minimis | N/A |
| Class N10 Claims | Falcon Foam Intercompany Claims | Impaired | de minimis | N/A |
| Class O10 Claims | HOMExperts Intercompany Claims | Impaired | de minimis | N/A |
| Class P10 Claims | Professional Services Intercompany Claims | Impaired | de minimis | N/A |
| Class Q10 Claims | Testing Systems Intercompany Claims | Impaired | de minimis | N/A |
| Class R10 Claims | Supply Chain Solutions Intercompany Claims | Impaired | de minimis | N/A |
| Class S10 Claims | Ventures Intercompany Claims | Impaired | de minimis | N/A |
| Class T10 Claims | Jefferson Holdings Intercompany Claims | Impaired | de minimis | N/A |
| Class U10 Claims | OC Overseas Intercompany Claims | Impaired | de minimis | N/A |
| Class A11 Claims | OCD Subordinated Claims | Impaired | $277 | 0% |
| Class A12 Interests | OCD Interests | Impaired | N/A | Cancelled and Extinguished |
| Class B12 Interests | FB Interests | Unimpaired | N/A | Retained |
| Class C12 Interests | ESI Interests | Unimpaired | N/A | Retained |
| Class D12 Interests | Vytec Interests | Unimpaired | N/A | Retained |
| Class E12 Interests | Soltech Interests | Unimpaired | N/A | Retained |
| Class F12 Interests | OCFT Interests | Unimpaired | N/A | Retained |
| Class G12 Interests | OC Sweden Interests | Unimpaired | N/A | Retained |
| Class H12 Interests | IPM Interests | Unimpaired | N/A | Retained |
| Class I12 Interests | Integrex Interests | Unimpaired | N/A | Cancelled and Extinguished |

[3] The holders of Allowed Intercompany Claims in Classes A10 through U10 will be credited with value in the amounts set forth in the Plan. Accordingly, holders of such Allowed Intercompany Claims will not receive actual distributions of Cash or New OCD Common Stock on account of such Claims.

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                          .    Chapter 11
                                .
OWENS CORNING, et al.,               .    Case Nos.00-
03837(JKF)
                                .    Jointly Administered
        Debtors.               .
                                .    Jan. 30, 2006 (10:43 a.m.)
                                .    (Wilmington)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

to resolve whatever comes up. Whenever you have a document

this long, as the Court's well aware, I'm sure issues will

come up, but I can't imagine that we won't be able to resolve

them, and we'll work very hard to do so.

THE COURT: Okay. What I was trying to get to by

this discussion is whether or not a disclosure statement's

going to be approved on April the 5th, and I don't know at

this point, but if most of the objections are resolved and

you just have a little bit of word-smithing to do here and

there, then perhaps sometime in April the disclosure

statement will be approved, and I wanted to see whether or

not I should try to give you plan dates. I think your idea

of keying the exclusivity extension to the end of that

solicitation period and the plan confirmation hearing makes

sense, which is why I was attempting to sort of backing that.

MR. PERNICK: Well, let me raise a couple of issues

with the Court that would affect the timing, but I do think

if the Court's willing to discuss dates for confirmation,

that will also help focus everybody on the process. We have

to do some amended voting procedures. They will be

substantially the same as the ones that the Court

conditionally approved the last time. There are some changes

that we will black-line and send out to everybody. What we

thought we would do is actually put those on either for the

I think the good news is that that will allow the schedule. The bad news is we may need more days then what you would normally need for a confirmation hearing.

THE COURT: Well, I have three days in July, that's all. I can reserve them all for you if you want. Unfortunately, one of them is not with the other two. One is July 10th - Mona, are you sure I'm in town that day? Okay. July 10th, and the other two are the 17th and 18th of July, and they would all be in Pittsburgh.

MR. PERNICK: Can I consult for one moment, Your Honor?

THE COURT: Yes.

MR. PERNICK: Your Honor, I think those dates are acceptable - They're not acceptable?

THE COURT: Well, yeah, they are. I'm just not really sure about the 10th. Something in the back of my mind is telling me that I have a conflict that day, but it's not on the calendar so I don't know if I'm mis-recollecting the day or it just hasn't made the calendar yet.

MR. PERNICK: Okay.

THE COURT: So, I'll give them to you, the 10th, 17th and 18th, but you may get an order from me if I find out that in fact I have a conflict on the 10th that will make it just the 17th and 18th.

MR. PERNICK: Okay, I think that's fine.

THE COURT: Okay, so we'll reserve those days anyway.

MR. RAHL: Your Honor, just for the record on the question of dates. We're happy to move ahead. We do anticipate there are a few points of discovery that we need to pursue between now and July, and while I understand that Mr. Pernick isn't in a position - Mr. Pernick and Mr. Monk aren't in a position to start making commitments on the fly about that, I just want to note for the record that we do expect some reasonable cooperation from them in that regard.

THE COURT: Okay, well, I think at the outset of the case I tried to make it clear that if you need discovery to get ready for plan confirmation you're to get it. So, to the extent that you need it, I think it ought to start because I really don't think the focus of the fight at this point is going to be on the disclosure statement. So, I think we ought to try to get through that and move to confirmation.

MR. RAHL: That's fine with us, Your Honor, perfectly fine.

MR. PERNICK: Your Honor, I actually had a moment to just confer with everybody. I think if Mr. Rahl is agreeing to litigate those issues all within confirmation, we will agree that we will figure out cooperatively a discovery

issue of the market capitalization. Your Honor, based on the price per share as of the close of business last Friday, January 27th, with respect to the common stock, the common stock was trading at $4.25 per share and approximately 21,as of last week, approximately $21 per share for the preferred. Given the outstanding amounts of shares of common stock and preferred securities, 55.4 million approximately of the common and 4 million approximately of the preferred outstanding, there is a market capitalization of over $235 million for the common stock and $84 million for the preferred securities. We believe, your Honor, that the Court should take into account the market cap of the shares. It's not a speculative indicator of value. There are numerous holders in the market. Even the debtors concede that there are over at least 6,500 holders of the common stock alone out in the marketplace. Your Honor, I would also point out that no less an authority than the United States Supreme Court has determined that the market, particularly in the plan confirmation context, that the market is the best indicator of value, and that the Court made that determination in the LaSalle decision.

THE COURT: And I don't disagree with that, but did I get the numbers correct? Two hundred thirty-five million and 84 million respectively?

I think that is the point that should - that Your Honor should be considering the most.

THE COURT: Well, I think I have to consider the fact that it's $7 billion unless and until it's satisfied on appeal. It's a final judgment unless it's reversed. So, I have no discretion. As far as I'm concerned that's the number.

MR. KLAUDER: Your Honor, equity committees are not mandated by statute. It's a heavy burden to prove, and it hasn't been proven here so we would request that you deny the request for an equity committee. Thank you.

THE COURT: Anyone else? Mr. Gray, any final comments?

MR. GRAY: I do have just one comment, Your Honor, and that is that the Court should look at the issue of the potential return to equity as an issue of whether the debtors are hopelessly insolvent. I don't believe that the debtors are hopelessly insolvent. There are several possibilities out there that would put equity in the money and under the standard, Your Honor, we believe that we meet that element of the test for approval of an official equity committee under 1102(a)(2).

THE COURT: Well, it seems to me that the test is not met. There is no evidence before me that the debtor is

solvent at this point in time in any way. I have no authority to assume that the liabilities are going to be anything less than $7 billion because the District Court's told me that's what they are, and I am not an appellate court to set aside District Court determinations. So, as far as I'm concerned, it's $7 billion. If I add up all the numbers that have been put on the record with respect to the asset value of the debtor, they don't total $7 billion, and that's not the debtor's only claim. So, I don't see how at this point equity is entitled to a distribution or will get a distribution under any scenario, and at this point in time, I, therefore, am denying this motion. If the FAIR Act passes and this case is still pending, if the $7 billion number is set aside and the number is low enough that in fact equity stands a chance at recovering funds, at that point I will certainly hear the Equity Committee's motion and probably have a much different reaction to it than I have now. But as of today, this motion is denied without prejudice. There is no basis for me to find that equity will receive a return of any type in this case based on the asset value of the debtor. So, it's denied for that reason without prejudice. Mr. Pernick, if you will submit an order, run it by Mr. Gray first, please.

MR. PERNICK: Thank you, Your Honor.

# UNREPORTED OPINIONS

Westlaw.

Not Reported in F.Supp.                                                                              Page 1
Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
In re EDISON BROTHERS STORES, INC., et al.,
Debtors.
Jonathan VICTOR, Richard Polak, and Martin Katz,
Appellants,
v.
EDISON BROTHERS STORES, INC., et al.,
Appellees.
**No. CIV.A. 96-177-SLR.**

June 27, 1996.

Laura Davis Jones, and Joel A. Waite, of Young,
Conaway, Stargatt & Taylor, Wilmington, Delaware;
and Harvey R. Miller, and Richard P. Krasnow, of
Weil, Gotshal & Manges LLP, New York, New
York, and D.J. Baker, of Weil, Gotshal & Manges
LLP, Houston, Texas, for appellees/debtors.
Jeffrey C. Wisler, of Williams, Hershman & Wisler,
of Wilmington, Delaware, and Peter D. Wolfson,
Carole Neville, John A. Bicks, and Pamela Cohen, of
Pryor, Cashman, Sherman & Flynn, New York, New
York, for appellants.
Thomas L. Ambro, and Deborah E. Spivack, of
Richards, Layton & Finger, Wilmington, Delaware,
and David S. Kurtz, Timothy R. Pohl, and Sean D.
Malloy, of Jones, Day, Reavis & Pogue, Chicago,
Illinois, for the Official Committee of Unsecured
Creditors of Edison Brothers Stores, Inc.
E. Gordon Robinson, and Susan R. Sherrill, of U.S.
Securities and Exchange Commission, Atlanta,
Georgia, and Ellen W. Slights, Assistant United
States Attorney, Wilmington, Delaware, for U.S.
Securities and Exchange Commission.

*MEMORANDUM OPINION*

SUE L. ROBINSON, District Judge

I. INTRODUCTION AND BACKGROUND

**\*1** Pending before the court is a motion filed by
appellee, the Official Committee of Unsecured
Creditors (hereinafter the "Creditors' Committee"),
for an order dismissing the appeal of Joseph Harrosh,
Jonathan Victor, Richard Polak and Martin Katz
(hereinafter the "appellants"), all of whom are non-
insider public shareholders of Edison Brothers Stores,

Inc. and 65 subsidiaries (hereinafter the "debtors")
which filed chapter 11 petitions in this district's
bankruptcy court in November 1995. [FN1] By letters
dated November 9 and November 22, 1995,
appellants wrote to the United States Trustee
requesting that an official equity committee be
appointed pursuant to 11 U.S.C. § 1102(a) [FN2] On
December 7, 1995, the United States Trustee declined
appellants' request.

> FN1. As of the Petition Date, approximately
> 22,000,000 shares of the debtors' common
> stock were outstanding. Those shares are
> widely held by more than 4,000 record
> holders, and a substantially larger number of
> beneficial holders.

> FN2. Section 1102(a) of the Bankruptcy
> Code provides in relevant part that:
> (1) As soon as practicable after the order for
> relief under chapter 11 of this title, the
> United States trustee shall appoint a
> committee of creditors holding unsecured
> claims and may appoint additional
> committees of creditors or of equity security
> holders as the United States trustee deems
> appropriate.
> (2) On request of a party in interest, the
> court may order the appointment of
> additional committees of creditors or of
> equity security holders if necessary to assure
> adequate representation of creditors or of
> equity security holders. The United States
> trustee shall appoint any such committee.
> (Emphasis added)

On January 12, 1996, appellants filed a motion with
the bankruptcy court requesting the appointment of
an official committee of equity security holders. The
California Public Employees Retirement System
(holding approximately 150,000 shares of the debtors'
common stock) and the Securities and Exchange
Commission ("SEC") supported the motion. The
debtors, the United States Trustee and the Creditors'
Committee opposed the motion.

Hearings on the motion were held by the bankruptcy
court on February 29 and March 20, 1996.
Appellants asserted to the court that (1) the debtors
were not insolvent, (2) the debtors' public shares were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

widely held, (3) the debtors' chapter 11 cases were complex, and (4) insiders of the debtors could not adequately represent the interest of public shareholders in the chapter 11 cases for conflict of interest reasons. The opponents to the motion argued that the debtors' current and former management could and would provide adequate representation for the debtors' public shareholders, as a result of their ownership of approximately 35% of the debtors' outstanding common shares. The bankruptcy court declined to appoint an equity committee, stating during the course of the hearing the following, *inter alia:*
* "I'm going to deny without prejudice obviously, because as this case progresses I think there may be an appropriate time for a committee of equity holders...."
* "[I]f somebody wants to come on with evidence to suggest that [the interests of insider shareholders are not aligned with those of non-insider shareholders,] I'd be glad to entertain it...."
* "[I]f the petitioning shareholders reach a point where they think that additional facts need to be brought to my attention which would warrant a change of my position, then I would urge them to do so...."
* "I think that based upon a different posture six months from now [the request to appoint an equity committee] may be an appropriate application...."

(D.I. 16, # 15 at 101, 103, 114, 114-115, respectively)

Appellants thereafter filed a timely appeal to this court. In response to the appeal, the Creditors' Committee filed the pending motion to dismiss the appeal for want of subject matter jurisdiction.

## II. DISCUSSION

**\*2** As with many bankruptcy cases, it is a difficult task in the case at bar to divine legal principles when dealing with an equitable process revolving around a discretionary matter. Clearly the establishment of an official equity committee pursuant to 11 U.S.C. § 1102(a) is a discretionary matter, the resolution of which is fact-driven and, therefore, not amenable to any bright line tests. And while the bankruptcy court in this case has expressed its willingness to revisit its order if facts warrant, the court has conclusively determined that, on the present record, the appointment of an equity committee is not necessary to assure adequate representation of non-insider equity security holders.

To establish that review of the bankruptcy court's decision is appropriate at the present time, appellants must show that the decision is either a final order, an interlocutory order appealable under 28 U.S.C. § 158(a)(3), or a collateral order.

### A. Final Orders

This court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a)(1). Finality is viewed flexibly in the bankruptcy context. *See, e.g., In re Trans World Airlines, Inc.,* 182 B.R. 102, 105 (D.Del.1995) ("In bankruptcy cases, the courts accord finality a somewhat 'flexible pragmatic definition' ") (*citing In re Columbia Gas System, Inc.,* 146 B.R. 106, 110 (D.Del.1992), *aff'd,* 50 F.3d 233 (3d Cir.1995)); *In re Columbia Gas System, Inc.,* 182 B.R. 397 (D.Del.1995); *In re Buckhead America Corp.,* 180 B.R. 83, 84 (D.Del.1995). The Third Circuit has explained the rationale for viewing finality under a less rigorous standard in the bankruptcy area as follows:
Bankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.

*In re Amatex Corp.,* 755 F.2d 1034, 1039 (3d Cir.1985). In the Third Circuit, courts typically look to a number of factors to determine if an order is a final order: 1) the impact of the bankruptcy court's order upon the assets of the bankruptcy estate; 2) the necessity for further fact-finding on remand to the bankruptcy court; 3) the preclusive effect of the district court's decision on the merits of subsequent litigation; and 4) the furtherance of judicial economy. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 920 F.2d 1127, 1131 (3d Cir.1990).

Appellants do not offer specific arguments that the factors identified in *Allegheny* weigh in favor of finding finality under the circumstances at bar. Instead, appellants essentially argue the merits of the dispute, i.e., finality should be found (and the order reversed) so that "the debtors' thousands of public shareholders [will not be excluded] from effective participation in the reorganization process including the restructuring of the debtors' business operations, the formulation of the business plan, and the negotiation of a plan of reorganization." (D.I. 15 at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3

8) With none of the factors even arguably applying, however, and with the only case law directly on point holding contrary to appellants' position, [FN3] the court concludes that the order in dispute is not final for purposes of an appeal of right pursuant to 28 U.S.C. § 158(a)(1).

> FN3. The United States Court of Appeals for the Second Circuit held in In re Johns-Manville Corp., 824 F.2d 176, 179-180 (2d Cir.1987) that "[o]rders denying shareholder requests for official committee status" are not final for purposes of appeal because they "do not resolve particular disputes within the overall bankruptcy case; they simply affect the committee structure within which various disputes in the reorganization proceeding will be considered."

### B. Interlocutory Orders

**\*3** Section 158(a)(3) of Title 28 of the United States Code gives this court jurisdiction to hear appeals, with leave of court, from interlocutory orders and decrees. In deciding whether an interlocutory order is appealable in the bankruptcy context, courts have typically borrowed the standard found in 28 U.S.C. § 1292(b), which governs whether an appeal of an interlocutory order of a district court to a court of appeals is warranted. In re Delaware and Hudson Ry. Co., 96 B.R. 469, 472-73 (D.Del.), aff'd, 884 F.2d 1383 (3d Cir.1989). Although the concept of finality is accorded some measure of flexibility in the context of § 158(a)(1) appeals, apparently the same standard does not apply in the context of § 158(a)(3) interlocutory appeals. Thus, an appellant must establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." Id. at 473. Also, under § 1292(b), an interlocutory appeal will be granted only when the order at issue (1) involves a controlling question of law as to which there is (2) substantial ground for difference of opinion and (3) when an immediate appeal from the order may materially advance the ultimate termination of the litigation. Id.

The court declines to characterize the dispute at bar as presenting "exceptional circumstances" warranting leave to appeal under § 158(a)(3). Although one might arguably characterize the issue of when it is appropriate to establish an official equity committee as a "controlling question of law," nevertheless the court is not convinced that an immediate appeal in

this case will materially advance the ultimate termination of the litigation (as opposed to materially advancing the rights of appellants, as they argue).

### C. Collateral Orders

The final basis for appellate jurisdiction is the collateral order doctrine. In general, the collateral order doctrine applies to the class of prejudgment orders which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430 (1985) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)). For the collateral order doctrine to apply, an order must satisfy three conditions: 1) it must "conclusively determine the disputed question;" [FN4] 2) it must "resolve an important issue completely separate from the merits of the action;" and 3) it must "be effectively unreviewable on appeal from a final judgment." Richardson-Merrell, 472 U.S. at 431.

> FN4. Both in their opening and reply briefs, the Creditors' Committee focuses solely on this first condition that must be satisfied if the collateral order doctrine is to apply. The court nevertheless has reviewed the other two conditions.

As noted above, the bankruptcy court has conclusively determined that, under the facts of record, it is not necessary to appoint an official equity committee to assure adequate representation in the reorganization process to non-insider equity shareholders. [FN5] The issue of whether non-insider public shareholders are adequately represented in the reorganization process is an important issue (as attested to by the interest in these proceedings by the Securities and Exchange Commission) completely separate from the merits of the reorganization. Finally, all parties to this dispute have acknowledged that, at some point in the proceedings, the opportunity to effectively participate in the reorganization will be lost, thereby mooting the question of official committee status. To decline review of this kind of order in the reorganization context will most certainly engage the court and the parties in a guessing game of when such an issue has been developed enough for review without being

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

mooted by the passage of time.

> FN5. The use of the "without prejudice" language is not persuasive in this context, since a change of facts is generally grounds for revisiting a matter.

### III. CONCLUSION

**\*4** Although the court is cognizant of the long-standing Congressional policy against piecemeal appeals which underlies the final judgment rule, the court is satisfied that the issue of whether an equity committee should be appointed under the facts of record has been determined in such a fashion that appellate review is warranted under the collateral order doctrine without waiting for any further factual development. Therefore, the motion to dismiss filed by the Creditors' Committee is denied.

An order shall issue.

D.Del.,1996.
**In re Edison Bros. Stores, Inc.**
Not Reported in F.Supp., 1996 WL 363806 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1996 U.S. Dist. LEXIS 13768, *

LEXSEE 1996 US DIST LEXIS 13768

**In re EDISON BROTHERS STORES, INC., et al., Debtors. JONATHAN VICTOR, RICHARD POLAK, and MARTIN KATZ, Appellants, v. EDISON BROTHERS STORES, Appellees.**

**Jointly Administered Chapter 11, Case No. 95-1354 (PJW), Civil Action No. 96-177-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1996 U.S. Dist. LEXIS 13768*

**September 17, 1996, Decided**

**NOTICE:** [*1]  FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Affirmed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellee debtors filed chapter 11 petitions in the Bankruptcy Court for the District of Delaware. The bankruptcy court denied without prejudice the appellant shareholders' motion for appointment of an official committee of equity security holders pursuant to the Bankruptcy Code (Code), specifically *11 U.S.C.S. § 1102*(a). The shareholders appealed the order.

**OVERVIEW:** The argument raised on appeal was that Congress intended that the official committee was one of the principal shareholder protections of the Code. The court affirmed the bankruptcy court's judgment reasoning there was significant evidentiary support for the bankruptcy court's findings of fact. Consequently, the court concluded that the bankruptcy court's findings of fact were not clearly erroneous. The court further determined that while it was clear that Congress recognized the vulnerability of public shareholders in reorganization proceedings and intended to protect them with legislation, that Congress declined to provide for the mandatory appointment of equity committees in the Code, specifically *11 U.S.C.S. § 1102*, instead leaving the appointment decision within the discretion of bankruptcy court based on a case by case determination. The court concluded that based on the bankruptcy court's application of the facts to the law, the bankruptcy court did not abuse its discretion in finding that an equity committee was not necessary to assure adequate representation of shareholder interests.

**OUTCOME:** The bankruptcy court's order denying the appointment of an official committee for equity security holders was affirmed.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Appeals > Appellate Jurisdiction > Collateral Order Doctrine*
*Bankruptcy Law > Committees > Chapter 11 Committees*
[HN1] To establish jurisdiction over a bankruptcy order, a district court must find that the decision of the bankruptcy court is either a final order, an interlocutory order appealable under *28 U.S.C.S. § 158*(a)(3), or a collateral order. The issue of whether an equity committee should be appointed warrants appellate review under the collateral order doctrine.

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN2] The findings of fact of a bankruptcy court are reversible only if clearly erroneous. *Fed. R. Bankr. P. 8013*. A bankruptcy court's choice, interpretation, and application of the underlying rule of law are subject to plenary review. In reviewing mixed questions of law and fact the district court must apply the appropriate standard to each component. This rule also applies to reviewing an ultimate finding of fact. A mixed question of law and fact is found whenever a legal precept is applied to the sum of the facts of a case.

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Appeals > Standards of Review >*

1996 U.S. Dist. LEXIS 13768, *

*Clearly Erroneous Review*
*Bankruptcy Law > Committees > Chapter 11 Committees*
[HN3] Where a bankruptcy court has to first find facts on which to base its determination that an equity committee is not necessary to assure adequate representation, an appellate court reviews the bankruptcy court's determination as an ultimate finding of fact. *11 U.S.C.S. § 1102*(a)(2).

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review*
[HN4] Under the clearly erroneous standard, an appellate court must accept a bankruptcy court's findings of fact unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Bankruptcy Law > Practice & Proceedings > Appeals*
*Bankruptcy Law > Committees > Chapter 11 Committees*
[HN5] The Bankruptcy Code, specifically *11 U.S.C.S. § 1102*(a)(2) gives the bankruptcy court discretion to appoint an equity committee when it is necessary to assure adequate representation. Section 1102(a)(2), in part, states that the bankruptcy court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. Since the statute explicitly provides the bankruptcy court with discretion in this matter, an appellate court reviews a bankruptcy court's decision for abuse of discretion. As there is no statutory test for adequacy of representation, it must be determined by the facts of the case.

*Bankruptcy Law > Committees > Chapter 11 Committees*
[HN6] General guidelines assist in determining whether there is a need for additional committees pursuant to the Bankruptcy Code, particularly *11 U.S.C.S. § 1102*(a)(2). Specifically, courts consider (1) the number of shareholders, (2) the complexity of the case, and (3) whether the cost of the additional committee outweighs the concern for adequate representation. However, these factors are simply guidelines for the court to consider and "every case must be judged on its own facts." Consequently, the establishment of an equity committee pursuant to § 1102(a) is a discretionary matter, the resolution of which is fact driven and, therefore, not amenable to any bright line tests.

*Bankruptcy Law > Committees > Chapter 11 Committees*
[HN7] Until Congress recognizes that inherent conflicts of interest exist between management and public shareholders in the bankruptcy context that warrant the mandatory appointment of an equity committee, the statutory test remains "adequacy of representation" to be determined on the facts of each case. The proponents seeking establishment of an equity committee have the initial burden of developing a factual record to demonstrate the need for adequate representation.

**COUNSEL:** Laura Davis Jones, Esquire, and Joel A. Waite, Esquire, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware. Of counsel: Harvey R. Miller, Esquire, and Richard P. Krasnow, Esquire, of Weil, Gotshal & Manges LLP, New York, New York, and D. J. Baker, Esquire, of Weil, Gotshal & Manges LLP, Houston, Texas, attorneys for appellees/debtors.

Jeffery C. Wisler, Esquire, of Williams, Hershman & Wisler, of Wilmington, Delaware. Of counsel: Peter D. Wolfson, Esquire, Carole Neville, Esquire, John A. Bicks, Esquire, and Pamela Cohen, Esquire, of Pryor, Cashman, Sherman & Flynn, New York, New York, attorneys for appellants.

Thomas L. Ambro, Esquire, and Deborah E. Spivack, Esquire, of Richards, Layton & Finger, Wilmington, Delaware. Of counsel: David S. Kurtz, Esquire, Timothy R. Pohl, Esquire, and Sean D. Malloy, Esquire, of Jones, Day, Reavis & Pogue, Chicago, Illinois, attorneys for the Official Committee of Unsecured Creditors of Edison Brothers Stores, Inc.

Of Counsel: E. Gordon Robinson, Esquire, and Susan R. Sherrill, Esquire of U.S. Securities and Exchange Commission, Atlanta Georgia, and Ellen W. Slights, Esquire, **[*2]** Assistant United States Attorney, Wilmington, Delaware, attorneys for U.S. Securities and Exchange Commission.

**JUDGES:** Sue L. Robinson, District Judge

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Dated: September 17, 1996

Wilmington, Delaware

ROBINSON, District Judge

1996 U.S. Dist. LEXIS 13768, *

## I. INTRODUCTION

This case comes before this court as an appeal from an order of the Bankruptcy Court for the District of Delaware (the "bankruptcy court") denying the appointment of an official committee for equity security holders. The appellants in this case, Joseph Harrosh n1, Jonathan Victor, Richard Polak and Martin Katz, are all non-insider public shareholders of Edison Brothers Stores, Inc. and sixty-five (65) subsidiaries ("debtors"). The debtors filed chapter 11 petitions in this district's bankruptcy court on November 3, 1995. On March 29, 1996, the bankruptcy court issued the order denying without prejudice the appointment of an official committee of equity security holders. (D.I. 16, Ex. 18) Subsequently, appellants filed an appeal in this court.

n1 After this appeal was filed, Joseph Harrosh sold his shares of Edison Brothers Stores. (Opening Br. of Appellants at 2, fn.1)

[*3]

For the reasons that follow, the bankruptcy court's order denying the appointment of an official committee for equity security holders will be affirmed.

## II. JURISDICTION

[HN1] To establish jurisdiction this court must find that the decision of the bankruptcy court is either a final order, an interlocutory order appealable under 28 U.S.C. § 158(a)(3), or a collateral order. On June 21, 1996, this court determined that the issue of whether an equity committee should be appointed warrants appellate review under the collateral order doctrine. (D.I. 29.); see *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 93 L. Ed. 1528, 69 S. Ct. 1221 (1949).

## III. BACKGROUND

Chapter 11 petitions were filed by the debtors on November 3, 1995 in this district's bankruptcy court. n2 By letters dated November 9 and November 22, 1995, appellants wrote to the United States Trustee requesting that an official equity committee be appointed pursuant to *11 U.S.C. § 1102(a).* n3 On December 7, 1995, the United States Trustee declined appellants' request.

n2 As of the petition date, approximately 22,000,000 shares of debtors' common stock were outstanding. Those shares are widely held by more than 4,000 record holders and a substantial number of beneficial holders. (D.I. 16, Ex. 2)

[*4]

n3 *Section 1102(a) of the Bankruptcy Code* provides in relevant part that:

(1) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

(Emphasis added)

On January 12, 1996, appellants filed a motion with the bankruptcy court requesting the appointment of an official committee of equity security holders. (D.I. 16, Ex. 3) The California Public Employees Retirement System (holding approximately 150,000 shares of the debtors' common stock) and the Securities and Exchange Commission ("SEC") supported the motion. (D.I. 16, Ex. 4, 5, 9, 10, 11, 12, [*5] and 13) The debtors, the United States Trustee, and the Official Creditors' Committee opposed the motion. (D.I. 16, Ex. 6, 7, and 8)

The bankruptcy court held hearings on February 29 and March 20, 1996. (D.I. 16, Ex. 14, and 15) Appellants asserted to the court that (1) the debtors were not insolvent, (2) the debtors' public shares were widely held, (3) the debtors' chapter 11 cases were complex, and (4) insiders of the debtors could not adequately represent the interest of public shareholders in the chapter 11 cases for conflict of interest reasons. (D.I. 16, Ex. 15 at 101) The appellants did not assert any specific facts regarding the alleged conflict of interest between insider shareholders and public shareholders. (D.I. 16, Ex. 15 at 103)

The opponents to the motion argued that the debtors' current and former management could and would provide adequate representation for the debtors' public shareholders, as a result of their ownership of

approximately 35% of the debtors' outstanding common shares. The bankruptcy court declined to appoint an equity committee, stating during the course of the hearing the following, inter alia:

> * "I'm going to deny without prejudice [*6] obviously, because as this case progresses I think there may be an appropriate time for a committee of equity holders. . . ."

> * "If somebody wants to come on with evidence to suggest that [the interests of insider shareholders are not aligned with those of non-insider shareholders,] I'd be glad to entertain it. . . ."

> * If the petitioning shareholders reach a point where they think that additional facts need to be brought to my attention which would warrant a change of my position, then I would urge them to do so. . . ."

> * I think that based upon a different posture six months from now [the request to appoint an equity committee] may be an appropriate application. . . ."

(D.I. 16, Ex. 15 at 101, 103, 114, 114-115)

Appellants thereafter filed a timely appeal to this court. The SEC filed a brief in support of appellants' appeal. The debtors, the Official Creditors' Committee, and the United States Trustee filed briefs in opposition to the appeal.

## IV. STANDARD OF REVIEW

[HN2] The findings of fact of a bankruptcy court are reversible only if clearly erroneous. *Fed. Rules Bankr. Rule 8013; Chemetron Corp. v. Jones, et al., 72 F.3d 341, 345 (3d Cir. [*7] 1995),* cert. denied, *134 L. Ed. 2d 548, 116 S. Ct. 1424 (1996),* (citing *Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-102 (3d Cir. 1981)).* A bankruptcy court's choice, interpretation, and application of the underlying rule of law is subject to plenary review. *Chemetron Corp. v. Jones, 72 F.2d at 345.* In reviewing mixed questions of law and fact the district court must apply the appropriate standard to each component. *See Moody v. Security Pac. Business Credit, Inc., 971 F.2d 1056, 1063 (3d Cir. 1992).* This rule also applies to reviewing an ultimate finding of fact. n4 A mixed question of law and fact is found whenever a legal precept is applied to the sum of the facts of a case. *Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir.*

*1992).*

> n4 The Third Circuit has distinguished three different kinds of facts used in the review of judicial findings: (1) concept-basic facts, (2) inferred facts, and (3) ultimate facts. *Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981).* Basic facts are "historical and narrative events elicited at trial, admitted by stipulation, or not denied, where required." Id. Inferred facts are drawn from basic facts only to the extent that "logic and human experience indicate a probability that certain consequences can and do follow from the basic facts." Id. Finally, ultimate facts are conclusions of law or "at least a determination of a mixed question of law and fact." Id.

### [*8] [HN3]

Since the bankruptcy court had to first find facts on which to base its determination that an equity committee was not necessary to assure adequate representation," this court will review the bankruptcy court's determination as an ultimate finding of fact. *11 U.S.C. § 1102(a)(2).* Thus, the court will apply the clearly erroneous standard to the bankruptcy court's initial findings of facts and apply plenary review with respect to the court's application of § 1102(a)(2).

## V. DISCUSSION

### 1. Bankruptcy Court's Findings of Fact

The bankruptcy court made the following findings of fact: (1) there are numerous public shareholders, (2) the case is complex because the company is large, (3) the debtor is not hopelessly insolvent. (D.I. 16, Ex. 15 at 25, 101, 110) While finding that the case is complex because of the size of the company, the bankruptcy court noted that the capital structure is not complex. n5 (D.I. 16, Ex. 15 at 110) The bankruptcy court also found that insider shareholders constitute 35 percent of equity. (D.I. 16, Ex. 15 at 102-103) The bankruptcy court declined to find that there was an inherent conflict of loyalty between insider shareholders and non-insiders. [*9] (D.I. 16, Ex. 15 at 105) The bankruptcy court asked the appellants' counsel for evidence so that it could make a fact finding as to whether there are conflicts of interest between insider and non-insider shareholders. (D.I. 16, Ex. 14 at 136-137; Ex. 15 at 103, 114) Appellants did not supply any facts suggesting that insider shareholders were not aligned with non-insider shareholders.

> n5 The bankruptcy court stated: "This is a

1996 U.S. Dist. LEXIS 13768, *

big, big case, but in terms of capital structure I think it's a plain vanilla." (D.I. 16, # 15 at 110)

[HN4]

Under the clearly erroneous standard, the court must accept the bankruptcy court's findings of fact "unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (quoting Hoots v. Pennsylvania, 703 F.2d 722, 725 (3rd Cir. 1983)).* The facts found by the bankruptcy court [*10] are not in dispute. Specifically, the parties do not dispute that insider shareholders constitute 35 percent of equity, that there are numerous shareholders, and this case is complex due to the size of the company. The parties also stipulated to the fact that, based on public information, the debtors did not appear hopelessly insolvent. (D.I. 16, Ex. 15 at 2-7, 80) Finally, the parties did not question the bankruptcy court's finding that the debtor's capital structure is not complex. Based on a review of the factual record, the court finds significant evidentiary support for the bankruptcy court's findings of fact. Consequently, the court concludes that the bankruptcy court's findings of fact are not clearly erroneous.

### 2. Legal Standard Under *11 U.S.C. § 1102*(a)(2)

[HN5] *Section 1102(a)(2) of the Bankruptcy Code* gives the bankruptcy court discretion to appoint an equity committee when it is necessary to assure adequate representation. Section 1102(a)(2), in part, states that the "court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." (Emphasis [*11] added) Since the statute explicitly provides the bankruptcy court with discretion in this matter, this court will review the bankruptcy court's decision for abuse of discretion. See *In re Vertientes, Ltd., 845 F.2d 57, 58-59 (3d Cir. 1988).* As there is no statutory test for adequacy of representation, it must be determined by the facts of the case. *In re Johns-Manville Corp., 68 Bankr. 155, 158 (S.D.N.Y. 1986),* appeal dismissed, *824 F.2d 176 (2d Cir. 1989),* (quoting *In re Baker Indus. Corp., 55 Bankr. 945, 948 (S.D.N.Y. 1985)).*

[HN6] General guidelines have developed to assist the court in determining whether there is a need for additional committees. Specifically, courts have considered (1) the number of shareholders, (2) the complexity of the case, and (3) whether the cost of the additional committee outweighs the concern for adequate representation. *In re Wang Lab., Inc., 149 Bankr. 1 (Bankr. D. Mass. 1992)* (citing tripartite test of *In re Johns-Manville Corp., 68 Bankr. 155 (S.D.N.Y. 1986)).*

However, these factors are simply guidelines for the court to consider and "every case must be judged on its own facts." *In re Wang Lab., Inc., 149 Bankr. at 2.* Consequently, [*12] as this court stated earlier, "the establishment of an equity committee pursuant to *11 U.S.C. § 1102*(a) is a discretionary matter, the resolution of which is fact driven and, therefore, not amenable to any bright line tests." (D.I. 29 at 3)

The Securities and Exchange Commission (SEC), in support of the appellants, asserts that Congress intended that the official committee be one of the principal shareholder protections of the Bankruptcy Code. The SEC cites legislative history to show that Congress recognized the practical conflicts of management in a large public company bankruptcy case. Thus, the SEC argues, § 1102(a) should be construed to protect shareholders when there are conflicts between management and shareholders.

The court notes that the congressional intent behind enacting chapter 11 of the Bankruptcy Code was "to counteract the natural tendency of a debtor in distress to pacify large creditors, with whom the debtor would expect to do business, at the expense of small and scattered public investors." S.Rep. No. 989, 95th Cong. 2d Sess. 10 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5796. The Senate Report emphasized: "As public investors are likely to be junior [*13] or subordinated creditors or debtholders, it is essential for them to have legislative assurance that their interests will be protected. Such assurance should not be left to a plan negotiated by a debtor in distress and senior or institutional debtors who will have their own best interest to look after." Id.

Based on the legislative history, it is clear that Congress recognized the vulnerability of public shareholders in reorganization proceedings and intended to protect them with legislation. Despite this recognition, Congress declined to provide for the mandatory appointment of equity committees in § 1102, instead leaving the appointment decision within the discretion of bankruptcy courts based on a case-by-case determination.

### 3. Adequacy of Representation Under Section 1102(a)(2).

The appellants argue that an equity committee is needed because there are "inherent" conflicts of loyalty which render insider shareholders "legally incapable" of representing the interests of public shareholders. (D.I.34 at 17, 21) Appellants point to the fact that, in a bankruptcy context, the directors owe a fiduciary duty to not only the shareholders, but also to creditors. (D.I. 34 at [*14] 17) Based on this assertion, appellants argue that the "debtors' management in this case or any other bankruptcy case, as a matter of law, cannot exclusively advocate for the interests of the shareholders, particularly as against creditors." (D.I. 34 at 17) (emphasis added).

1996 U.S. Dist. LEXIS 13768, *

While appellants may be correct in their observation that management cannot exclusively advocate for the interests of the shareholders, the statutory focus of § 1102(a)(2) is not whether shareholders are "exclusively" represented, but whether they are "adequately" represented. [HN7] Until Congress recognizes that inherent conflicts of interest exist between management and public shareholders in the bankruptcy context that warrant the mandatory appointment of an equity committee, the statutory test remains "adequacy of representation" to be determined on the facts of each case. *In re Johns-Manville Corp., 68 Bankr. at 158.* Appellants have the initial burden of developing a factual record to demonstrate the need for adequate representation. *Id. at 157.*

The bankruptcy court determined that an equity committee was not needed because management held a 35 percent equity interest, the debtor's capital structure was [*15] not complex, and there were no facts to suggest management was not aligned with non-insider shareholders. The bankruptcy court characterized management's 35 percent equity interests as a "substantial" interest, which is "just as interested in maintaining value as is the smallest public investor." (D.I. 16, Ex. 15 at 101, 102) The court refused to find management's loyalties to both creditors and shareholders relevant without specific facts. During the hearings, the court stated that "if the petitioning shareholders reach a point where they think additional facts need to be brought to my attention which would warrant a change of my position, then I would urge them to do so." (D.I. 16, Ex. 15 at 114) Appellants also argue that management's self-interest makes it incapable of adequately representing non-insider shareholders. (D.I. 54 at 24) The bankruptcy court stated it was "pure speculation" that management would not protect its 35 percent equity interest. Id. Appellants did not provide any evidence to the contrary.

The bankruptcy court also noted that, for the purposes of determining whether shareholders are adequately represented, the complexity of capital structure is more relevant [*16] than the complexity of the debtor's business affairs. (D.I. 16, Ex. 25) The bankruptcy court reasoned that there was less need to appoint an equity committee in this case because there were not any different levels of debt or different classes of equity. (D.I. 16, Ex. 25) Based on the bankruptcy court's application of the facts to the law, the court concludes that the bankruptcy court did not abuse its discretion in finding that an equity committee was not necessary to assure adequate representation of shareholder interests.

## VI. CONCLUSION

For the foregoing reasons, the court will affirm the order of the bankruptcy court denying appellants' motion to direct the appointment of an equity committee. An order consistent with this memorandum opinion shall issue.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------x
                                        :
In re:                                  :        Chapter 11
                                        :        Case Nos. 00-3837 (JKF)
OWENS CORNING, et al.,                  :        (Jointly Administered)
                                        :
                  Debtors.              :        Related to Docket No. _____
                                        :
-------------------------------------------------------x
```

**ORDER GRANTING MOTION OF THE *AD HOC* COMMITTEE OF PREFERRED AND EQUITY SECURITY HOLDERS FOR LEAVE TO APPEAL BANKRUPTCY COURT ORDER DENYING MOTION FOR THE APPOINTMENT OF AN OFFICIAL PREFERRED AND EQUITY SECURITY HOLDERS COMMITTEE**

Upon consideration of the *Motion of the Ad Hoc Committee of Preferred and Equity Security Holders for Leave to Appeal Bankruptcy Court Order Denying Motion for the Appointment of an Official Preferred and Equity Security Holders Committee* (the "Motion"); and upon consideration of any and all objections and/or responses that were filed in opposition to the Motion; and it appearing that due and proper notice of the Motion has been given to all interested parties in this case; and after due deliberation and sufficient cause appearing therefor;

IT IS ORDERED that, the Motion is GRANTED.

Dated**:**_____        _____
                                    United States District Judge

#449265